q|15

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2004 AUG 26  PM 2: 36

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **THOMAS KREAMER,** | * | **CIVIL ACTION NO. 03-CV-3139** |
| **Plaintiff,** | * | |
| **VERSUS** | * | **JUDGE KURT D. ENGLEHARDT** |
| | * | |
| **HENRY'S MARINE and** | * | **MAGISTRATE JUDGE SHUSHAN** |
| **TETRA APPLIED TECHNOLOGIES,** | * | |
| **INC.** | * | |
| **Defendants.** | * | |

**************************************

## DEFENDANT TETRA'S MOTION FOR SUMMARY JUDGMENT

Defendant, TETRA APPLIED TECHNOLOGIES, L.P., (hereinafter "Defendant" or "TETRA" and improperly identified in Plaintiff's Complaint as "Tetra Applied Technologies, Inc."), submits this Motion for Summary Judgment  pursuant to Federal Rule of Civil Procedure 56, and requests that this Court issue an Order dismissing Plaintiffs' claim, with prejudice, and granting summary judgment in favor of Defendant for reasons more fully set forth in the attached memorandum in support.

Plaintiff's sole claim against Tetra is for alleged hostile environment based upon same-sex harassment that he concedes lasted less than about one week. He has not only testified to facts that doom his claim, but he cannot establish a dispute of material fact as to elements necessary to sustain it.   In fact, he cannot even clear the threshold requirement of

___ Fee_____
___ Process_____
_X_ Dktd _7X9L_
___ CtRmDep_____
___ Doc. No._____

establishing that the conduct that he found offensive was based upon his gender, let alone that it was severe or pervasive.  Further, even if Plaintiff could clear these hurdles, he has testified that Tetra responded promptly to his complaint and continued to act until it was remedied.

WHEREFORE, Defendant Tetra respectfully requests that this Court issue an Order dismissing Plaintiff's claim against it, with prejudice, and granting summary judgment in favor of Tetra and against Plaintiff.  Further, Tetra requests that the Court award it all other legal and equitable relief to which it may be entitled.

Respectfully submitted, this 26th day of August, 2004.

STEPHEN J. ROPPOLO, T.A.
Louisiana Bar No. 20442
A. KEVIN TROUTMAN
Louisiana Bar No. 27668
FISHER & PHILLIPS LLP
201 St. Charles Avenue, Suite 3710
New Orleans, Louisiana  70170
Telephone:  (504) 522-3303
Facsimile:   (504) 529-3850

ATTORNEYS FOR DEFENDANT,
TETRA APPLIED TECHNOLOGIES, L.P.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **THOMAS KREAMER,** | * | **CIVIL ACTION NO. 03-CV-3139** |
| **Plaintiff,** | * | |
| **VERSUS** | * | **JUDGE KURT D. ENGLEHARDT** |
| | * | |
| **HENRY'S MARINE and** | * | **MAGISTRATE JUDGE SHUSHAN** |
| **TETRA APPLIED TECHNOLOGIES,** | * | |
| **INC.** | * | |
| **Defendants.** | * | |

**************************************

## CERTIFICATE OF SERVICE

I, A. Kevin Troutman,  hereby certify that on this _26th_ day of August, 2004, a copy of

the above and foregoing Motion for Summary Judgment has been served, via U.S. Mail, properly

addressed and postage pre-paid, upon the following counsel of record:

J. Courtney Wilson
1510 Veterans Boulevard
Metairie, Louisiana  70005

and

Henry's Marine Services
P.O. Box 1915
Morgan City, Louisiana 70381

_A. Kevin Troutman_
A. KEVIN TROUTMAN

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **THOMAS KREAMER,** | * | **CIVIL ACTION NO. 03-CV-3139** |
| **Plaintiff,** | * | |
| **VERSUS** | * | **JUDGE KURT D. ENGLEHARDT** |
| | * | |
| **HENRY'S MARINE and** | * | **MAGISTRATE JUDGE SHUSHAN** |
| **TETRA APPLIED TECHNOLOGIES,** | * | |
| **INC.** | * | |
| **Defendants.** | * | |

**************************************

## ORDER

Considering the foregoing Motion for Summary Judgment filed by Defendant Tetra Applied Technologies, L.P., (improperly identified in Plaintiff's Complaint as "Tetra Applied Technologies, Inc."),

**IT IS ORDERED, ADJUDGED AND DECREED** that the Motion be and is hereby **GRANTED**, and that Plaintiff's claims are hereby **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that Defendant be awarded costs incurred in defense of this lawsuit.

New Orleans, Louisiana, this _____ day of _____, 2004.

_____
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **THOMAS KREAMER,** | * | **CIVIL ACTION NO. 03-CV-3139** |
| **Plaintiff,** | * | |
| **VERSUS** | * | **JUDGE KURT D. ENGLEHARDT** |
| | * | |
| **HENRY'S MARINE and** | * | **MAGISTRATE JUDGE SHUSHAN** |
| **TETRA APPLIED TECHNOLOGIES,** | * | |
| **INC.** | * | |
| **Defendants.** | * | |

**************************************

## NOTICE OF HEARING

TO:   J. Courtney Wilson
      1510 Veterans Boulevard
      Metairie, LA 70005

      Henry's Marine Services
      P.O. Box 1915
      Morgan City, LA 70381

PLEASE TAKE NOTICE that Defendant, Tetra Applied Technologies, L.P., (improperly identified in Plaintiff's Complaint as "Tetra Applied Technologies, Inc.") will bring on for hearing Defendant Tetra's Motion for Summary Judgment before the Honorable Kurt D. Engelhardt of the United States District Court for the Eastern District of Louisiana on the 15th day of September, 2004, at 9:30 a.m., or as soon thereafter as counsel may be heard.

Respectfully submitted, this 26th day of August, 2004.

STEPHEN J. ROPPOLO, T.A.
Louisiana Bar No. 20442
A. KEVIN TROUTMAN
Louisiana Bar No. 27668
FISHER & PHILLIPS LLP
201 St. Charles Avenue, Suite 3710
New Orleans, Louisiana  70170
Telephone:  (504) 522-3303
Facsimile:   (504) 529-3850

ATTORNEYS FOR DEFENDANT,
TETRA APPLIED TECHNOLOGIES, L.P.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| THOMAS KREAMER, | * | CIVIL ACTION NO. 03-CV-3139 |
| Plaintiff, | * | |
| VERSUS | * | JUDGE KURT D. ENGLEHARDT |
| | * | |
| HENRY'S MARINE and | * | MAGISTRATE JUDGE SHUSHAN |
| TETRA APPLIED TECHNOLOGIES, | * | |
| INC. | * | |
| Defendants. | * | |

************************************

### MEMORANDUM IN SUPPORT OF
### DEFENDANT TETRA'S MOTION FOR SUMMARY JUDGMENT

Defendant, TETRA APPLIED TECHNOLOGIES, L.P., (hereinafter "Defendant" or "Tetra" and improperly identified in Plaintiff's Complaint as "Tetra Applied Technologies, Inc."), submits this Memorandum in Support of Defendant Tetra's Motion for Summary Judgment. Plaintiff asserts a claim of same-sex sexual harassment by a co-employee who was assigned to another tug boat that was servicing the same rig to which his boat was assigned. Plaintiff admits, however, that the conduct he found to be offensive was confined to a period of less than one week of his employment with Tetra and consisted primarily of several incidents of "grabbing" or similar horseplay, including non-sexual bullying, which Defendant dealt with progressively and brought to a halt by promptly transferring the alleged harasser to another location in the middle of a scheduled 14-day hitch. For the reasons and legal authorities noted herein, Defendant's Motion should be granted.

## I. Facts

Plaintiff, who is 38 years old, began working aboard boats when he was 13. Plaintiff's Dep. at 38-40. In December of 2001 he went to work for Tetra as deckhand/wheelman on a tug boat, the *Bacchus*. *Id*. at 56, 59, 61. While working for Tetra, Plaintiff normally worked hitches of 14 days on and seven days off. *Id*. at 88. Tug boats such as the Bacchus had two-member crews, consisting of a deckhand and captain, both of whom worked and slept on the boat. *Id*. 61-63. When they were not working, they could eat meals on the rig to which the boat was assigned. *Id*. When they were off duty, crew members could also use a break room on the rig to watch television. *Id*. at 64.

Plaintiff regarded Carroll Carrere, a deckhand from another Tetra boat assigned to the same rig, as a "loud mouth type" who was "always" arguing with or hollering at other employees. Plaintiff's Dep. at 248. Plaintiff testified that Carrere's language was consistently profane and he had been known to engage in excessive horseplay.[1] *Id*. On the other hand, Tetra regarded Carrere as reliable and competent, but sometimes prone toward an above-average level of horsing around. Falgout Declaration at ¶ 4. Before May of 2002 no one had ever complained to Sid Falgout, Tetra's Human Resources ("HR") Manager, that Carrere had engaged in conduct that was sexually offensive in any way. *Id*. at ¶ 5.

On May 9, 2002, Carrere allegedly grabbed Plaintiff for the first time. Plaintiff's Dep. at 138. Plaintiff alleges that he was working on the *Bacchus*, which was tied up beside Carrere's boat, *Mr. Troy*, when Carrere approached him from the side and grabbed him in the area of the crotch. Plaintiff testified that he told Carrere to stop and reported the occurrence to the captain

---

[1] After a verbal warning on July 14, 2001, Tool Pusher Hank Smith formally warned Carrere on July 23 that horseplay involving throwing eggs at Timothy Legeion was careless, unsafe and a violation of Company policy. Falgout Declaration at ¶ 8-11; *Exhibit F-1*[TETRA 00097].

of the *Bacchus*, Darrell Naquin.  Naquin said that he would report the occurrence to Carrere's captain, Wayne Lombas and Plaintiff went back to work.  *Id.* at 139, 143-44.  He alleges that Carrere teased him by grabbing him in a similar fashion a total of four times on May 9.  *Id.* at 147.

That evening, acting upon advice from his father during a cellular telephone conversation, Plaintiff began preparing notes regarding his daily interactions with Carrere.[2] Plaintiff's Dep. at 137-38; Dep. Ex. 7.  Carrere allegedly grabbed Plaintiff a total of four more times, on May 10, 12, 14 and 15, during the next six days.  *Id.* at 149, 171, 177, 190.  Carrere engaged in additional bullying or teasing, and on May 14, he allegedly burned Plaintiff's wrist with a hot Zippo lighter that Carrere was purportedly trying to put between Plaintiff's legs while he was seated in the galley after work.  *Id.* at 154, 175-76, 179.  Additionally, Carrere allegedly directed offensive some gestures and whistles at Plaintiff between May 9 and May 15, although Plaintiff did not make any notes regarding these occurrences.  *Id.* at 162.

Despite warnings from both Naquin and Lombas to leave Plaintiff alone, Carrere continued to tease Kreamer.  Plaintiff's Dep. at 161, 172.  The Tool Pusher, who was in charge of Tetra's operations on the rig itself, also told Carrere to stop bothering Kreamer and contacted Woody Domangue, Tetra's Port Captain, about the situation.  *Id.* at 205-06.  Domangue did not have the authority to deal with employee disputes or disciplinary matters, so he advised Falgout of Plaintiff's complaints.  Falgout Declaration at ¶ 12-13.  Falgout did not wait for Carrere to complete his 14-day hitch before taking action; rather, he decided to immediately transfer Carrere, at the same rate of pay, to another location, thereby separating Carrere and Plaintiff

---

[2] Kreamer testified that the notes were made at the conclusion of each work day and contained references to the offensive conduct committed by Carrere that day.  Plaintiff's Dep. at 153.

indefinitely. *Id.* at ¶ 16-18. No one, including Carrere, touched Plaintiff for the remainder of Plaintiff's employment with Tetra.[3] Plaintiff's Dep. at 197.

Plaintiff testified that on the evening of May 14, he learned that Tetra had made arrangements to move Carrere the next morning. Plaintiff's Dep. at 192. Before departing, however, Carrere allegedly leveled a parting shot at Plaintiff. He grabbed Plaintiff a final time in the engine room of the Bacchus early on the morning of May 15. *Id.* at 190-92. Plaintiff testified that in doing so, Carrere grabbed his sides and said he would like to "f\*\*k that piece of ass." *Id.* After Carrere left, however, Plaintiff completed his hitch without encountering him again. *Id.* at 194-95. Except for another co-employee apparently making a single teasing remark that Carrere would be coming back to the field, Plaintiff experienced no other offensive behavior during the rest of his hitch. *Id.* at 197-98.

Upon completing the hitch, Plaintiff talked with Falgout in person about his complaints regarding Carrere. The thrust of Plaintiff's complaint was his contention that Tetra should have fired Carrere instead of issuing a warning and transferring him. Plaintiff's Dep. at 204. Plaintiff testified that during this discussion, Falgout thoroughly reviewed Plaintiff's notes with him and suggested that he add details to clarify what had occurred and make the notes more complete. *Id.* at 146-47, 149, 214. Falgout also purportedly explained that Carrere had reported being grabbed around the neck by Plaintiff. *Id.* at 212.

Immediately following his completion of the 14-day hitch during which Carrere had allegedly harassed him, Plaintiff suffered an off-the-job injury that resulted in him being unable to return to work until August 13, 2002. While unable to work due to this injury, he received

---

[3] Plaintiff testified that he saw Carrere only once more while working for Tetra. According to Plaintiff, Carrere, whose vessel was working a different rig than Plaintiff's, saw Plaintiff across the water and whistled at him. Plaintiff's Dep. at 117, 120, 129, 245.

disability income payments through Tetra. Plaintiff's Dep. at 90-91, 113. He worked as a Tetra employee only one more day, August 13, before the Company sold its tugboat operations to Henry's Towing, terminating all of its employees (including Plaintiff) in the process.[4]  *Id.* at 114, 216. As noted above, Plaintiff encountered Carrere only once on August 13, when Carrere's boat passed nearby and he whistled at Plaintiff. *Id.* at 117, 120. Even though he was no longer a Tetra employee after August 13, Plaintiff called Falgout on August 14 to report that Carrere was working in the same field where he was assigned. *Id.* at 125-26. Even though this was a call from a former Tetra employee, Falgout promptly contacted a Henry's Marine representative to alert him of Plaintiff's complaint. Falgout Declaration at ¶ 26-27. After August 13, Plaintiff never saw or talked with Carrere again. Plaintiff's Dep. at 129.

On August 21, Defendant Henry's Marine terminated Plaintiff.

## II. STANDARD OF REVIEW

Summary judgment is proper when the submissions of the parties, taken together, "show that there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a material factual question. In making this determination, the Court views all evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505 (1986. However, when the party requesting summary judgment asserts facts showing that the opposing party's claims cannot be sustained, the opposing party must come forward with specific, admissible facts showing that there is a genuine issue for trial. *Lechuga v. Southern Pacific Transport Co.*, 949 F.2d 790, 798 (5th Cir. 1992).

.

---

[4] Plaintiff became an employee of Henry's Marine the next day, on August 14, 2002. Plaintiff's Dep. at 114.

### III. LAW AND ARGUMENT

Plaintiff's claim against Tetra is for same-sex hostile work environment harassment by Carrere. Because Plaintiff was no longer Tetra's employee after August 13, 2002, Tetra is not legally responsible for events after that date, including his termination by Henry's Towing on August 21, 2002. Title VII addresses only the conduct of a Plaintiff's employer.[5] 42 U.S.C. § 2000 *et seq*.

Because Plaintiff does not allege any tangible employment action against him by Tetra, his claim is of necessity one for an alleged hostile work environment. *See e.g., Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 118 S.Ct. 998, 1001 (1998). To succeed in a claim of hostile environment by a co-employee, Plaintiff must prove he belongs to a protected group; that he was subject to unwelcome harassment; the harassment was based upon his gender; that the harassment sufficiently affected a term, condition or privilege of employment; and that Tetra knew or should have known of the harassment and failed to take prompt remedial action. *Watts v. Kroger Co.*, 170 F.2d 505, 509 (5th Cir. 1999). Plaintiff's claim fails for a number of reasons.[6]

First, Plaintiff cannot establish that Carrere's conduct was even based upon gender and therefore actionable under Title VII. Second, given the rough and tumble offshore environment and the very limited duration of the alleged harassment, it was not so severe or pervasive as to violate Title VII, even if it was based upon Plaintiff's sex. Third, Tetra responded promptly and effectively to Carrere's conduct, almost in textbook fashion. From the beginning, Tetra took

---

[5] Plaintiff has sued Henry's for what he believes to be his wrongful termination. However, since that claim does not involve Tetra, it will not be addressed here.

[6] Nearly all of the evidence offered in support of Tetra's Motion for Summary Judgment comes from Plaintiff's own deposition testimony.

action that was reasonably calculated to stop the offensive behavior and it continued to act until the situation was resolved.[7] Plaintiff's claim must therefore be dismissed.

## A.   The Evidence Does Not Establish That The Offensive Conduct Was Because of Plaintiff's Gender.

A threshold question in this case is whether Carrere's conduct constituted sex discrimination at all. *LaDay v. Catalyst Technology, Inc.*, 302 F.3d 474, 478 (5th Cir. 2002). Even if the conduct alleged was severe and pervasive, it is not covered by Title VII unless it constituted sex discrimination. 302 F.3d at 478. Plaintiff must establish that Carrere's conduct constituted sex discrimination by 1) showing that it was motivated by general hostility toward men in the workplace; 2) offering comparative evidence about how Carrere treated members of both sexes in a mixed-sex workplace; or 3) showing that Carrere made "explicit or implicit proposals of sexual activity" **and** providing "credible evidence" that Carrere was homosexual. *Id.* Plaintiff has made no allegations regarding either of the first two methods for establishing sex discrimination and he has produced little or no evidence to support the third method.

Credible evidence of Carrere's homosexuality would be some proof that he actually intended to have sexual contact with Plaintiff rather than merely to humiliate him for reasons unrelated to a sexual interest. *Id.* at 480. Alternatively, Plaintiff could attempt to establish Carrere's homosexuality through evidence of sexual advances upon other male employees, but Plaintiff has offered no such evidence.[8] *Id.* Moreover, Plaintiff has not shown that Carrere made proposals of sexual activity and intended to have sexual contact with him, as opposed to intending to humiliate him. Plaintiff's testimony in fact reveals that Carrere's behavior was like that of a school-yard bully, not someone who proposed or sought sexual contact.

---

[7] Tetra did not even wait until the end of Carrere's 14-day hitch to transfer him. Plaintiff's Dep. at 195.
[8] Plaintiff never saw Carrere touch another employee in the manner that he touched Plaintiff, and the "only thing" he heard about was Carrere allegedly grabbing Marty Newcome "on the sides." Plaintiff's Dep. at 247-48.

First, Plaintiff found Carrere's loud, profanity-laced manner offensive, which was indicative of generally ill will between the two men. Plaintiff's Dep. at 248. Second, Carrere was apparently prone toward taking horseplay too far. *Id*. at 248. Third, Carrere made little or no attempt to hide his conduct toward Plaintiff, which included whistling, gestures and other non-sexual behavior, such as throwing the *Bacchus'* rope off the bit when Plaintiff tried to tie it up. In fact, Plaintiff admitted that witnesses were present during most of Carrere's heckling. *Id*. at 151, 154, 180. Carrere, in fact, "kept pushing" his attempts to humiliate even after Plaintiff reported him. *Id*. at 162. These facts hardly indicate a desire for sexual contact, as opposed to humiliation.

Fourth, the only time when Carrere allegedly used language that could possibly indicate an intent to have sex with Plaintiff,[9] the circumstances demonstrate that his real goal again was humiliation. According to Plaintiff, this incident occurred while he was in the engine room of the *Bacchus*, after Tetra had arranged for Carrere to be moved and shortly before he actually departed. Plaintiff's Dep. at 192-94. Even in this situation, Carrere did not actually try to have sexual contact, however. Instead, he again taunted Plaintiff.

A:    ...he grabbed my sides and all I did was push him away, and I got out of the engine room, because I was looking for my captain and all to tell him what happened, and he told – the way Carroll told me, he says, "That's all right. You ain't got to tell him. I'm leaving anyway. I'm going on another boat, and I'm getting $5 more a day."

Plaintiff's Dep. at 194.[10]

---

[9] Carrere allegedly grabbed Plaintiff on the side of the hips and said he would "like to f**k that piece of ass." Plaintiff's Dep. at 193.
[10] As noted above, Carrere was transferred to a position on another tugboat at the same rate of pay, notwithstanding his apparent taunts to Plaintiff suggesting a $5 per day raise. Falgout Declaration at ¶ 18.

With the crew's work day beginning and his own departure imminent, Carrere's behavior in the engine room surely did not constitute a sexual proposition.[11] This brief encounter does not represent a realistic attempt or intent to initiate either seductive or coerced sexual contact. Instead, it was a "parting shot" at Plaintiff. Indeed, Carrere never again had personal contact with Plaintiff after this encounter. *Id.* at 129.

Even more significantly, Carrere's prior conduct revealed that sexual contact was never his intention. Consistently, he hassled Kreamer when an audience was present or nearby. On the other hand, Plaintiff admits that in a much more private setting Carrere made absolutely no sexual overtures toward him. Near the end of the week when their boats were assigned to the same rig, Plaintiff purportedly awoke to find Carrere standing in his sleeping quarters. Carrere, however, did not touch him, try to sit or lie on the cot with him or even say anything, even though the two men were completely alone. Instead of attempting to initiate sexual contact, Carrere simply left the room. *Id.* at 238-40. This conduct was totally inconsistent with an intent to have sexual contact with Plaintiff.

Considering the circumstances in which it occurred, Carrere's "f**k that piece of ass" comment contributes little or nothing toward establishing that he is homosexual under the *LaDay* analysis. A harasser may make sexually demeaning remarks and putdowns for sex-neutral reasons, but the critical issue is actually whether Plaintiff was exposed to disadvantageous terms or conditions of employment **due to his gender**. *LaDay*, 302 F.3d. at 480; *See also, Davis v. Coastal Int'l Security, Inc.*, 275 F.3d. 1119, 1123-24 (D.C. Cir. 2002) (sexually tinged conduct such as kissing gestures, crotch-grabbing and language describing oral sex were motivated by a

---

[11] The Seventh Circuit, which recognized same-sex sexual harassment before the *Oncale* decision, also observed that when men speak to other men, the use of explicit sexual language usually has no connection whatsoever to the sexual acts referenced. Instead, the use of such language is often an expression of animosity or juvenile provocation, not discrimination based upon sex. *See, Johnson v. Hondo, Inc.*, 125 F.3d 408, 412-13 (7th Cir. 1997).

workplace grudge, not sexual attraction).  Plaintiff has produced no evidence to show that he

suffered a workplace disadvantage because of his gender.

In fact, Plaintiff did not characterize his problems with Carrere as sexual overtures or

sexual harassment at any time while he worked for Tetra.  Falgout Declaration at ¶ 20-21.

Further, his own testimony about the "Zippo" incident of May 14 reveals that he had not

regarded **any** of Carrere's conduct as a sexual overture, but instead as "schoolyard bullying."

Plaintiff's reactions reflected anger, but absolutely no sexual connotation:

A:     ...he was sitting right by me when he did that, and after he burned me I know – I know I
       looked at Mr. Don.  I told him, I said, "This is the kind of shit that I'm tired of," and then
       I walked out.  I walked out of the galley.  You know, I was mad.  I just had to get away.

Plaintiff's Dep. at 184.

The Fifth Circuit's requirements to provide credible evidence of the harasser's

homosexuality **and** proposals of sexual activity make this a high threshold indeed, especially

since the harasser's homosexuality must be shown by establishing an intent to have sexual

contact with Plaintiff, not merely to humiliate him.  *LaDay*, 302 F.3d at 480.  The Court

established these demanding standards for a reason.  Same-sex harassment is unique, requiring

clear distinctions between conduct based on sexual attraction and conduct involving horseplay,

bullying, personal animosity and/or other bases that do not violate Title VII.  *Oncale*, 523 U.S. at

80.  The necessity to demonstrate **both** a proposal of and an intent to have sexual contact shows

that a Plaintiff's evidence must consist of far more than conjecture regarding the alleged

harasser's intentions.  *LaDay*, 302 F.3d at 478.

Plaintiff, however, does not even claim to know whether Carrere is homosexual and his

only reasons for guessing so are the engine room incident and the allegation that Carrere grabbed

his "privates."  *Id.* at 243.  Plaintiff knows nothing else about Carrere's sexual orientation or

even his marital status. *Id.* at 135-36. Carrere, however, is not homosexual. He is married with three children. Carrere Declaration at ¶ 15-16.

Like the incident in the engine room, the allegations that Carrere grabbed Plaintiff's "privates" by no means establish that the conduct was based upon an intent to initiate sexual contact, as opposed to being crass horseplay. *See, McCown v. St. John's Health Sys., Inc.*, 349 F.3d 540, 544 (8th Cir. 2003) (no Title VII violation when male supervisor grabbed employee by waist and buttocks; ground his genitals against Plaintiff's buttocks in simulated intercourse; tried to stick shovel handle in Plaintiff's anus; and made other lewd comments because the behavior was intended to irritate, not based on sex); *Rene v. MGM Grand Hotel, Inc.*, 243 F.3d 1206, 1207 (9th Cir. 2001) (summary judgment upheld where Plaintiff was, among other things, grabbed in the crotch, poked in the anus, caressed, hugged and forced to look at pictures of naked men having sex); *EEOC v. Harbert-Yeargin, Inc.*, 266 F.3d 498, 506 (6th Cir. 2001) (co-worker's grabbing and patting of genitals or buttocks was not gender discrimination under Title VII); *Collins v. TRL, Inc.*, 263 F. Supp 2d 913, 921 (M.D. Pa. 2003) (granting summary judgment where other male(s) grabbed Plaintiff's groin and stated, "Oop, got wood?"; told Plaintiff "[y]ou ought to put them lips where they belong," while grabbing his own crotch; and other crotch-grabbing, because the behavior was male-on-male horseplay); *English v. Pohanka of Chantilly, Inc.*, 190 F. Supp 2d 833, 835 (E.D. Va. 2002) (reprehensible acts were horseplay and not sexual overtures, although they included male employee pressing his genitals against a co-worker's shoulder, saying he wanted to "plant his salami between [co-worker's] cheeks;" asking co-worker to put his "meatballs" on a desk; smacking co-worker on behind; and rubbing fingers across co-worker's back and stating "I love you").

In the instant case, Plaintiff was always fully clothed and he characterized Carrere's action as "grabbing," never using sexual terms such as "fondling."  Furthermore, other than one incident, he cites no comments by Carrere that could even remotely suggest an intent to have sexual contact.   In sum, Plaintiff does not offer evidence establishing that he suffered a workplace disadvantage **because of his sex** or specifically that Carrere intended sexual contact with him.  *Compare, LaDay*, 302 F.3d at 476-77 (summary judgment for Defendant reversed where harasser fondled Plaintiff's anus similarly to "foreplay with a woman;" harasser said he was jealous of Plaintiff's girlfriend after seeing "passion marks" on his neck; and employer had received complaints from two other employees about harasser's explicit sexual overtures); and *Shepherd v. Slater Stells Corp.*, 168 F.3d 998, 1009-10 (7th Cir. 1999) (Plaintiff survived summary judgment where harasser referred to Plaintiff several times as a "handsome young man;" revealed that he was thinking of "f**k[ing Plaintiff] in the ass" after he had "rubbed himself to an erection;" and made other graphic suggestions regarding sexual activity).

In summary, Plaintiff has not produced sufficient evidence to show that the offending acts were based upon his gender, so his claim cannot succeed and should be dismissed.

**B.    Plaintiff Has Not Established That Carrere's Actions Were Severe or Pervasive.**

Under his hostile environment theory, Plaintiff must show that the 1) sex-based discrimination, intimidation, ridicule, and insults were 2) so severe or pervasive that they 3) altered the conditions of employment and 4) created an abusive working environment. *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000); *See also, National RailRoad Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002).  Such conduct must be extreme.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 2284 (1998).   In fact, it must destroy a Plaintiff's opportunity to succeed in the workplace.  *Shepherd v. Comptroller of Public Accountants of Texas*, 168 F.3d 871, 873 (5th Cir. 1999).  The goal of workplace equality is not served if a claim

can be maintained solely based on conduct that wounds or offends, but does not hinder an employee's performance. *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir.1996).

To be actionable, discriminatory affronts must destroy equal opportunity in the workplace. *DeAngelis v. El Paso Mun., Police Officers Ass'n.*, 51 F.3d 591, 593 (5th Cir. 1995). Further, the Plaintiff must subjectively perceive the environment to be abusive and the conduct must create an objectively hostile environment. *Harris v. Forklift Sys.*, 114 S.Ct. 367, 370 (1993). Based upon Plaintiff's own testimony, however, he was able to perform his job properly and safely throughout his hitch, including May 9-15, 2002, in spite of Carrere's antics. He never asked to be sent back to the dock or transferred to another boat. Plaintiff's Dep. at 173-75. Further, he and Carrere did not even see each other during most of the workday, each being assigned to a different tugboat. *Id.* at 189.

An employee need not prove tangible job action to establish a harassment claim, but the absence of such an action requires a commensurately higher showing that the harassing conduct was pervasive and destructive of the working environment. *B.T. Jones v. Flagship International*, 793 F.2d 714, 720 (5th Cir. 1986). Teasing and offhand comments do not amount to discriminatory job actions. *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). Plaintiff has alleged no tangible job action by Tetra and he has certainly not described conduct that destroyed his opportunity to succeed in the workplace because he admits, among other things, that he was able to continue performing satisfactorily. Plaintiff's Dep. at 173-75.

In a hostile environment analysis, a Court must consider all the circumstances. *Morgan*, 536 U.S. at 116. The impact of crude behavior in the workplace turns on a "constellation" of the relevant circumstances. *Oncale*, 523 U.S. at 81-82. However obnoxious Carrere's conduct may have been, it did not create an abusive environment or destroy equal opportunity on the *Bacchus*

13

or any other vessel in Tetra's fleet, where the atmosphere was vastly different from that of a retail shop or an administrative office. Although annoying, Carrere's conduct was tolerable enough that Plaintiff waited until the end of his hitch to complain to Falgout, Tetra's Human Resources Manager. Plaintiff's Dep. at 210, 212. Plaintiff admits this, even though he had daily opportunities to place telephone calls people to on-shore and he received Tetra's policy that requires employees to report suspected harassment to an HR representative. *Id*. 137, *Exhibit* 3; 81-82. Nevertheless, he still did not complain to Falgout or any other HR representative until days after Carrere was gone and his own hitch was over.

Plaintiff also suggests that some co-employees contributed to a hostile work environment by laughing at him during the eight days or so that he spent working for Tetra after May 15, 2002.[12] He does not, however, remember how many times this occurred. Further, he did not hear what the co-employees were saying or know whether it had anything to do with his gender or Carrere. In fact, he does not remember who laughed at him, but admits that he did not complain to anyone about it or confront the people he thought were laughing at him. Finally, he characterized the laughing as merely, in his words, "stupid sh*t." Plaintiff's Dep. at 226-28. These allegations do not describe illegal activity.

Considering Plaintiff's workplace environment, the sporadic nature of Carrere's conduct and its short duration, the alleged grabbing and teasing did not violate Title VII. Likewise, Plaintiff's rank speculation regarding co-employees who **may** have laughed about his experiences with Carrere is not actionable.

---

[12] After completing the two-week hitch that included May 9-15, Plaintiff did not work again until August 13, 2002, due to an off-the-job injury. Plaintiff's Dep. at 113. Thus, Plaintiff worked only one more day (August 13, 2002) for Tetra before he and several other employees were terminated in connection with Tetra's sale of the vessels to which they were assigned. Henry's Towing acquired these vessels and hired some of the employees, including Plaintiff. Falgout Declaration at ¶ 22-25.

Plaintiff has not alleged conduct that violates Title VII. Therefore, his claim cannot succeed and must be dismissed.

**C.    Tetra Took Prompt Remedial Action That Was Reasonably Calculated to End the Harassment and Its Actions Were Effective.**

Finally, assuming *arguendo* that the Plaintiff's allegations establish sufficiently severe or pervasive conduct based upon sex, Tetra is still not liable because it took prompt remedial action and indeed quickly put an end to the purported harassment. In fact, Plaintiff's chief complaint was not that Tetra failed to act swiftly in stopping Carrere's shenanigans, but that Carrere was not fired. Plaintiff's Dep. at 204. Notwithstanding Plaintiff's preferences regarding how Tetra should have dealt with Carrere, Defendant fulfilled its legal obligation by responding promptly and effectively. Plaintiff's claim must therefore fall.

An employer fulfills its legal obligation when its remedial action is "reasonably calculated" to end the harassment. *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 616 (5th Cir. 1999). Employers are not required to use the most serious form of discipline to punish an offending employee. *Landgraf v. USI Film Products*, 968 F.2d 427, 430 (5th Cir. 1992). Likewise, the employer's actions need not come immediately to be appropriate. *Dornhecker v. Malibu Grand Prix Corp.*, 828 F.2d 307, 309 (5th Cir. 1987). In *Dornhecker*, the Fifth Circuit found the employer's response was "unusually prompt" when it told the plaintiff that she would not have to work with an alleged harasser again after the end of a business trip that was in progress at the time of the complaint. *Id.* at 308-09. Explaining, the court observed that "[s]ince the demise of...dueling, society seldom has provided instantaneous redress for dishonorable conduct." *Id.* at 309.

Furthermore, no matter how offensive the behavior, Title VII requires remediation only when the employer knows or should know of prohibited harassment. *Nash v. Electrospace*

*System, Inc.*, 9 F.3d 401, 404 (5th Cir. 1993), *citing*, *Jones*, 793 F.2d at 720. This is particularly important in the instant case because even though Carrere's alleged conduct may have been crude or repulsive, it did not appear to be based upon Plaintiff's gender and Tetra had no reason to believe that it was.

Tetra could not be expected to recognize more than what Plaintiff himself perceived and recorded each night in his own handwritten log. Plaintiff's Dep. at 153; *Exhibit* 7. Plaintiff testified that these entries represent his best recollection of what actually happened in May of 2002, yet they contain **nothing** that appears to invoke the protection of Title VII. *Id.* Furthermore, Carrere is not homosexual and no other male employee had ever suggested that Carrere had made sexual advances toward them. Falgout Declaration at ¶ 5-6. Therefore, Tetra began remediation even **before** it was legally required.

Plaintiff alleges that Carrere grabbed him four times on May 9. Plaintiff's Dep. at 147. As already explained, although excessive, this alleged conduct appeared to be male-on-male horseplay and/or bullying, which Tetra nevertheless attempted to stop. Plaintiff's captain reported it to Lombas, captain of the *Mr. Troy. Id.* at 144, 161. It is undisputed that Lombas told Carrere to stop grabbing Plaintiff. *Id.* at 171-72. Also, after unsuccessfully trying to stop Carrere's rough-housing, both captains discussed Carrere's behavior with the Tetra tool pusher who was in charge of activity on the rig itself.[13] When the tool pusher's admonition did not put a stop to the objectionable behavior, he contacted Tetra's on-shore personnel for further

---

[13] Plaintiff testified that Hank Smith was Tetra's tool pusher while he and Carrere were assigned to the same rig. Plaintiff's Dep. at 256. However, Brian O'Blanc, who alternated with Smith as tool pusher on the rig, in fact signed a May 14, 2002, message reporting Carrere's actions to Woody Domangue. Falgout Declaration at ¶ 14, *Exhibit F-2.* For the purpose of this motion, it is nevertheless undisputed that Tetra's tool pusher acted as described herein.

assistance.[14]  *Id.* at 205-06.  When Falgout learned of the situation, he moved swiftly to transfer Carrere and discipline him.  Falgout Declaration at ¶ 14; 16-17; 19.

Although Carrere's conduct did not invoke Title VII, Tetra proceeded in a manner reasonably calculated to stop the roughhousing and teasing.  Furthermore, Tetra's initial actions were moderately successful because Carrere apparently toned down his behavior as a result. Plaintiff testified that after being grabbed four times on May 9, Carrere grabbed him just four more times during the next six days, which included the "parting shot" on May 15.  Plaintiff's Dep. at 149, 171, 177, 190.  Moreover, when Naquin, Lombas and the tool pusher recognized that Carrere had not completely stopped his antics, they presented the situation to Tetra's next level of management, who promptly and completely put an end to Carrere's behavior.

According to Plaintiff's own testimony, even though both he and Carrere were in the midst of a 14-day hitch and Title VII had not even been invoked, Tetra had already arranged to transfer Carrere by the evening of May 14, when the "Zippo" incident occurred, and before the May 15 comment.  Plaintiff's Dep. at 188.  Short of physically restraining Carrere or literally throwing him overboard, Tetra could not reasonably have done more or done it faster.

Moreover, Tetra's actions were not only **calculated** to be effective; they **were effective**. The men never even came in personal contact again after May 15.  Plaintiff's Dep. at 245. Plaintiff saw Carrere only once more, from some distance on August 13, 2002, when their boats briefly passed within the same proximity and Carrere whistled at him.[15]  *Id.* 117, 120, 129.  The following day, even though Plaintiff was no longer a Tetra employee, Falgout contacted Henry's Towing, at Plaintiff's request, once again to suggest that Carrere and Plaintiff remain separated

---

[14] The vessel captains and the tool pusher had limited authority regarding personnel decisions and regularly consulted with Falgout before initiating formal disciplinary action.  Falgout Declaration at ¶ 13.

[15] To the extent that Plaintiff asserts Carrere's whistle on August 13, 2002, supports his hostile environment claim, his argument cannot succeed for the same reasons articulated herein.

during their employment with Henry's Towing. *Id.* at 114; 127-28; Falgout Declaration at ¶ 27. Even then, when it no longer employed Plaintiff and had no legal responsibility to do so, Tetra helped him avoid or minimize exposure to Carrere.

When Title VII is implicated, the manner and promptness of an employer's response should be analyzed considering its hierarchy and immediate business demands. *Waymire v. Harris County, Texas*, 86 F.3d 424, 429 (5th Cir. 1996) (finding a three-month investigation resulted in a reasonably prompt response, taking the defendant's chain of command and business structure into account). Owing both to logistics and practicalities, often only the most serious circumstances rapidly result in formal disciplinary action during the middle of a hitch. In fact, Tetra's disciplining of Carrere in 2001, before Plaintiff was ever hired, underscores this point. On July 14, 2001, tool pusher Hank Smith verbally warned Carrere about excessive horseplay that involved throwing eggs at Timothy Legeion. Falgout Declaration at ¶ 8-11; *Exhibit F-1* (Employee Warning Notice signed July 23, 2001). Although he apparently put a stop to the behavior, Smith did not formally issue a warning to Carrere for at least another week, or until July 23. *Id.*

Accordingly, removing Carrere from a vessel and returning him to shore for disciplinary action in the middle of a hitch and within one week of the first sign of trouble involved extraordinarily swift action by Defendant. *See, Nash*, 9 F.3d at 404 (5th Cir. 1993) (employer responded promptly and effectively in an office setting by investigating and transferring Plaintiff within a week of her first complaint). Considering the Fifth Circuit's analysis in *Dornhecker* and the fact that Tetra separated Plaintiff and his alleged harasser before the end of their scheduled assignments, Tetra's actions were in fact exemplary.

In sum, Defendant's textbook response was reasonably calculated to stop Carrere's offensive behavior and Tetra escalated its response until the situation was resolved.   Indeed, Defendant did not even wait for the conclusion of Carrere's fourteen-day hitch before transferring him.  This entire process concluded within the period of a week.  Therefore, even if Carrere's conduct was severe, pervasive and based on sex, Plaintiff's claim still must be dismissed because Tetra took remedial action that was reasonably calculated to end Carrere's offensive behavior **before** it knew or should have known that the conduct constituted sex discrimination.

## IV.  CONCLUSION

As the foregoing explains, Plaintiff has admitted in his own testimony facts that destroy his claim and/or he cannot establish a dispute as to other material facts essential to his claim. Therefore, Tetra's Motion for Summary Judgment should be granted and Plaintiff's claim against Tetra should be dismissed with prejudice.

Done this 26th day of August, 2004.

STEPHEN J. ROPPOLO, T.A.
Louisiana Bar No. 20442
A. KEVIN TROUTMAN
Louisiana Bar No. 27668
FISHER & PHILLIPS LLP
201 St. Charles Avenue, Suite 3710
New Orleans, Louisiana  70170
Telephone:  (504) 522-3303
Facsimile:   (504) 529-3850

ATTORNEYS FOR DEFENDANT,
TETRA APPLIED TECHNOLOGIES, L.P.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| THOMAS KREAMER, | * | CIVIL ACTION NO. 03-CV-3139 |
| Plaintiff, | * | |
| VERSUS | * | JUDGE KURT D. ENGLEHARDT |
| | * | |
| HENRY'S MARINE and | * | MAGISTRATE JUDGE SHUSHAN |
| TETRA APPLIED TECHNOLOGIES, | * | |
| INC. | * | |
| Defendants. | * | |

**************************************

## CERTIFICATE OF SERVICE

I, A. Kevin Troutman,  hereby certify that on this _26th_ day of August, 2004, a copy of

Memorandum in Support of Defendant Tetra's Motion for Summary Judgment has been served,

via U.S. Mail, properly addressed and postage pre-paid, upon the following counsel of record:

J. Courtney Wilson
1510 Veterans Boulevard
Metairie, Louisiana  70005

and

Henry's Marine Services
P.O. Box 1915
Morgan City, LA 70381

_____
A. KEVIN TROUTMAN

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **THOMAS KREAMER,** | * | **CIVIL ACTION NO. 03-CV-3139** |
| **Plaintiff,** | * | |
| **VERSUS** | * | **JUDGE KURT D. ENGLEHARDT** |
| | * | |
| **HENRY'S MARINE and** | * | **MAGISTRATE JUDGE SHUSHAN** |
| **TETRA APPLIED TECHNOLOGIES,** | * | |
| **INC.** | * | |
| **Defendants.** | * | |

**************************************

## DEFENDANT TETRA'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendant, TETRA APPLIED TECHNOLOGIES, L.P., (hereinafter "Defendant" or "TETRA" and improperly identified in Plaintiff's Complaint as "Tetra Applied Technologies, Inc."), submits this Statement of Undisputed Material Facts, pursuant to Uniform District Court Rule 56.1, in connection with its Motion for Summary Judgment. Tetra contends that there is no genuine issue to be tried concerning the following material facts:

1. Plaintiff began working with Defendant Tetra in December of 2001 as a deckhand and wheelman on a tug boat, the *Bacchus*. Plaintiff's Dep. at 56, 59, 61.

2. The *Bacchus* had a two-member crew, both of whom worked and slept on the boat. *Id.* at 61-63.

3. While working for Tetra, Plaintiff normally worked hitches of 14 days on, with seven days off. *Id.* at 88.

4.    As of May 9, 2002, Carroll Carrere was a deckhand and wheelman assigned to another Tetra vessel, *Mr. Troy*. *Id.* at 69.

5.    Prior to May of 2002, no one had ever complained to Sid Falgout, Tetra's human resources manager, that Carrere had engaged in conduct that was sexually harassing or sexually offensive in any way. Falgout Declaration at ¶ 5.

6.    While working on the *Bacchus* during May of 2002, Plaintiff used his cellular telephone to call his wife and/or father almost every day. Plaintiff's Dep. at 90, 137.

7.    Upon being employed, Plaintiff received a copy of Tetra's policy that requires employees to report suspected harassment to human resources representative. *Id.* at 137.

8.    When the captains of the *Bacchus* and *Mr. Troy* became aware that Plaintiff was unhappy with Mr. Carrere's behavior toward him (Plaintiff), both captains attempted to put a halt to Mr. Carrere's behavior by, among other things, instructing him to stop bothering Plaintiff. *Id.* at 144, 161, 171-72.

9.    During May, 2002, Plaintiff continued to perform his job properly and safely throughout his hitch, including the period of May 9-15, when his alleged problems with Mr. Carrere occurred. *Id.* at 173-75.

10.   While he was experiencing his alleged problems with Mr. Carrere, Plaintiff did not ask to be sent back to the dock or transferred to another boat. *Id.*

11.   During the period of May 9-15, 2002, Plaintiff and Mr. Carrere did not see each other during most of each workday. *Id.* at 189.

12.   When the Tetra tool pusher became aware of the friction between Plaintiff and Mr. Carrere, he instructed them to leave each other alone. *Id.* at 206-07.

13.   When he became aware that friction was continuing between Plaintiff and Mr. Carrere, Tetra's tool pusher contacted Woody Domangue, Tetra's port captain, regarding the situation. *Id.* at 205-07.

14.   After learning of the friction between Plaintiff and Mr. Carrere, Woody Domangue referred the matter to Mr. Falgout. Falgout Declaration at ¶ 14.

15.   Upon learning of the friction between Plaintiff and Mr. Carrere, Mr. Falgout immediately arranged to have Mr. Carrere removed from his vessel and returned to shore to speak with him. Falgout Declaration at ¶ 17.

16.   Mr. Carrere did not receive an increase in pay when he was transferred from the *Mr. Troy*. Falgout Declaration at ¶ 18.

17.  Plaintiff did not complain about Mr. Carrere to Mr. Falgout (or any other Tetra human resources representative) until he returned to the dock at the end of his hitch in May, 2002. Plaintiff's Dep. at 210, 212.

18.  When Plaintiff spoke to Falgout, his principal complaint was that Tetra had not fired Mr. Carrere as a result of Plaintiff's complaints. *Id.* at 204.

19.  After Tetra returned Mr. Carrere to shore, Plaintiff did not encounter him any more during his 14-day hitch. *Id.* at 194-95.

20.  After completing his 14-day hitch in May, 2002, Plaintiff suffered an off-the-job injury and did not return to work with Tetra until August 13, 2002. *Id.* at 113.

21.  Plaintiff and Mr. Carrere never came into personal contact again after Mr. Carrere was removed from the Mr. Troy on or about May 15, 2002. *Id.* at 245.

22.  Plaintiff saw Mr. Carrere only once more after May 15, 2002, when their boats passed within sight of each other on August 13, 2002. *Id.* at 117, 120, 129.

23.  After August 13, 2002, Plaintiff never saw or spoke with Mr. Carrere again. Plaintiff's Dep. at 129.

24.  On August 13, 2002, Tetra sold the Bacchus and several other boats to Henry's Towing. Plaintiff's employment with Tetra also terminated on August 13, 2002. *Id.* at 114, 216.

25.  Plaintiff never saw Mr. Carrere touch another person in the offensive manner in which he allegedly touched Plaintiff during the period of May 9-15, 2002. *Id.* at 247-48.

26.  Plaintiff does not know whether Mr. Carrere is homosexual. *Id.* at 243.

27.  Plaintiff does not know anything about Mr. Carrere's sexual orientation or marital status. *Id.* at 135-36.

28.  Mr. Carrere is not homosexual. Carrere Declaration at ¶ 16.

29.  Mr. Carrere is married and has three children. *Id.* at ¶ 15.

Respectfully submitted, this _26th_ day of August, 2004.


STEPHEN J. ROPPOLO, T.A.
Louisiana Bar No. 20442
A. KEVIN TROUTMAN
Louisiana Bar No. 27668
FISHER & PHILLIPS LLP
201 St. Charles Avenue, Suite 3710
New Orleans, Louisiana  70170
Telephone:  (504) 522-3303
Facsimile:   (504) 529-3850

ATTORNEYS FOR DEFENDANT,
TETRA APPLIED TECHNOLOGIES, L.P.

4

.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| THOMAS KREAMER, | * | CIVIL ACTION NO. 03-CV-3139 |
|     Plaintiff, | * | |
| VERSUS | * | JUDGE KURT D. ENGLEHARDT |
| | * | |
| HENRY'S MARINE and | * | MAGISTRATE JUDGE SHUSHAN |
| TETRA APPLIED TECHNOLOGIES, | * | |
| INC. | * | |
|     Defendants. | * | |

*************************************

## CERTIFICATE OF SERVICE

I, A. Kevin Troutman, hereby certify that on this 26th day of August, 2004, a copy of

the above and foregoing Statement of Undisputed Material Facts has been served, via U.S. Mail,

properly addressed and postage pre-paid, upon the following counsel of record:


J. Courtney Wilson
1510 Veterans Boulevard
Metairie, Louisiana 70005

and

Henry's Marine Services
P.O. Box 1915
Morgan City, Louisiana 70381


A. KEVIN TROUTMAN

# SEE RECORD FOR
# EXHIBITS
# OR
# ATTACHMENTS
# NOT SCANNED

